UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| BONITA YVONNE WOODARD<br><br>*Plaintiff,*<br><br>VS.<br><br>NANCY A. BERRYHILL,[1] ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION<br><br>*Defendant.* | § <br>§ <br>§ <br>§ <br>§ CIVIL ACTION NO. 3:16-cv-126<br>§ <br>§ <br>§ <br>§ |

## MEMORANDUM OPINION AND ORDER

Bonita Woodard has filed this lawsuit to appeal a decision denying her applications for social security disability benefits under Title II of the Social Security Act.

### FACTUAL AND PROCEDURAL BACKGROUND

Woodard was born on February 5, 1961, and she completed high school as well as some college. On May 2, 2013, she applied for social security disability benefits, alleging that she became disabled on December 1, 2012 due to spinal fusion surgery, a torn right rotator cuff, limited dexterity in her right arm, and depression. After she filed her application, Woodard underwent surgery on her right shoulder in July 2013. Her claim was denied initially in August 2013, and again on reconsideration in October 2013.

---

[1] Carolyn W. Colvin was the Commissioner of the Social Security Administration ("SSA") at the time that Plaintiff filed this case but no longer holds that position. Nancy A. Berryhill is Acting Commissioner of the SSA and, as such, is automatically substituted as Defendant. *See* FED. R. CIV. P. 25(d).

Woodard sought a hearing before an administrative law judge ("ALJ"). On August 28, 2014, ALJ Robert Burdette held a hearing at which Woodard and her counsel appeared. An impartial vocational expert ("VE") also testified before the ALJ.

On November 4, 2014, the ALJ issued a decision denying Woodard's application. The Appeals Council confirmed the denial, and this action followed.

## Summary of the ALJ's Decision

The ALJ's decision followed the usual five-step process. First, the ALJ found that Woodard had not engaged in substantial gainful activity since December 1, 2012, her alleged date of disability. Second, the ALJ found that Woodard suffered from the following severe impairments: "lumbar spine degenerative disc disease, osteoarthritis of right shoulder and obesity." He found that Woodard's impairments of obstructive sleep apnea, hypertension, depression and anxiety were not severe impairments, "in that they cause no more than minimally vocationally relevant limitations."

Then, the ALJ evaluated all of Woodard's impairments and found that Woodard's impairments, alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ assessed Woodard's residual functional capacity ("RFC"), finding that she could perform "the full range of light work as defined in 20 CFR 404.1567(b)," and she "can lift 10 pounds frequently and 20 pounds occasionally," as well as "sit, stand and/walk 6 hours in an 8-hour workday," and "push/pull frequently 10 pounds and occasionally 20 pounds." However, the ALJ found that "[s]he can never climb ropes,

2

ladders or scaffolds," but she can "occasionally stoop, crouch and crawl." As for her right hand, the ALJ found that she could use it "occasionally . . . to reach in all directions."

In formulating this RFC, the ALJ stated that he had considered all of the evidence in the record, including medical records from treating physicians as well as the opinion of the state consultative examiner, William Culver, M.D. Dr. Culver examined Woodard on July 30, 2013, shortly after her shoulder surgery. The ALJ's opinion summarized the results of that exam, including the note that Culver's diagnosis was "morbid obesity, chronic low back pain, degenerative disc disease lumbar spine, rotator cuff injury status post recent repair, and high blood pressure." Dr. Culver also reported Woodard's history of lower back injury in December 1990 and a lumbar fusion in 1992, as well as her statement that she experienced symptoms of a tingling sensation in her left leg and foot, numbness and swelling, and pain when she walked.

The ALJ also addressed the follow-up care Woodard received after her shoulder surgery from Fondren Orthopedic Group in November 2013. Here, the ALJ noted Woodard's injured shoulder now showed "normal motor strength, negative impingement, negative crepitus, and no muscular atrophy."

Significantly, the ALJ found, "The medical record fails to support the claimant's allegations of ongoing and disabling symptoms." The ALJ noted that Woodard admitted to performing "significant and numerous activities of daily living, which further detracts from the credibility of her complaints." Among the listed activities was that Woodard reported "that she exercises three to four times weekly."

The ALJ then considered the VE's testimony that, according to the Dictionary of Occupational Titles, Woodard's past relevant work as a truck driver was "medium and semiskilled," as a medical assistant was "medium and unskilled," as a nurse assistant was "medium and semiskilled," and as a photo lab technician was "light and semiskilled." The ALJ found that Woodard was capable of performing her past relevant work as a photo lab technician, as it is actually and generally performed. Accordingly, the ALJ found that Woodard was not disabled.

Woodard contends that the ALJ's decision contains several errors and should be reversed. First, she contends that the ALJ improperly discredited the opinions of the state agency examining physician, Dr. Culver. Second, she contends that the ALJ erred by relying on VE testimony that was unreliable and conflicted with the Dictionary of Occupational Titles. Finally, she contends that the ALJ erred by failing to employ the "special technique" in evaluating her mental impairment of depression.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.* 529 F.3d 335, 339 (5th Cir. 2008). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECTV Inc. v. Robson,* 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

## STANDARD OF REVIEW

Judicial review of the ALJ's final decision under 42 U.S.C. § 405(g) is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the proper legal standard was used in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. denied, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Court must affirm the ALJ's final decision where substantial evidence supports the ALJ's decision and the Commissioner followed the relevant legal standards. *See Higginbotham v. Barnhart*, 405 F.3d 332, 335 (5th Cir. 2005). Reversal is appropriate only where no credible evidentiary choices support the Commissioner's decision. *See Johnson v. Bowen*, 864 F.2d 340, 343–14 (5th Cir. 1988). This Court may not reweigh the evidence, try the issues *de novo*, or substitute judgment for the Commissioner's finding. *Audler v. Astrue,* 501 F.3d 446, 447 (5th Cir. 2007).

## APPLICABLE LAW

### A. Statutory Basis for Benefits

Social Security disability insurance benefits are authorized by Title II of the Social Security Act. The disability insurance program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(c) (definition of insured status); 42 U.S.C. § 423(d) (definition of disability).

### B. Determination of Disability

Under the Social Security Act, a "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." *Id.* § 423(d)(2)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality demonstrable by acceptable clinical and laboratory diagnostic techniques. *Id.*; 42 U.S.C. § 1382c(a)(3)(B).

The five-step "sequential evaluation" process for determining disability is set out in the Commissioner's regulations. The steps are: (1) Is the claimant currently performing substantial gainful activity? (2) Does the claimant have a severe impairment? (3) Does

the impairment meet or equal an impairment listed in Appendix 1? (4) Does the impairment prevent the claimant from doing past relevant work? (5) Does the impairment prevent the claimant from doing any other work? *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007) (summarizing C.F.R § 404.1520(a)(4)(i)-(v)). If, at any step, the ALJ determines the claimant to be disabled, the determination is conclusive and the inquiry ends. *Id.*

The burden of establishing disability rests with the claimant for the first four steps, and then shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant is able to perform. *Id.* The Commissioner's analysis at steps four and five is based on the assessment of the claimant's RFC, or the work a claimant still can do despite his or her physical and mental limitations. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005); 20 C.F.R. §§ 404.1545 and 416.945. The Commissioner assesses the RFC before proceeding from step three to step four. *Id.* Once the Commissioner shows that a claimant is able to perform a significant number of jobs in the national economy, the burden shifts back to the plaintiff to rebut the finding. *Id.*

## ANALYSIS

### A. Did the ALJ err in evaluating the opinion of Dr. Culver, the state examining physician?

Woodard points to the opinion of Dr. Culver, which was that "it is my opinion that [Woodard] cannot perform all of her ADLs. At this time, she cannot maintain a home due to the recent surgery of her shoulder or don and doff her clothes and will have difficulty with personal hygiene. She should avoid walking or standing for long periods, repetitive

7

lumbar bending or overhead work, climbing ladders or stairs and lifting greater than five pounds. She should have no use of the right upper extremity until released from doctor care." Woodard contends that this opinion "established that Plaintiff, at best, was able to perform 'sedentary work'," not light work. Woodard also complains that the ALJ rejected Dr. Culver's opinion without an adequate basis, and that the ALJ was required to explain his reasons for doing so under 20 C.F.R. § 404.1527.

Woodard's motion seriously overstates any conflict between the ALJ's RFC and the limitations that Dr. Culver assessed in his opinion. Woodard wholly fails to account for the fact that Dr. Culver's opinion was rendered shortly after she had shoulder surgery—a fact he repeatedly made clear in his opinion. Additionally, there is no opinion by Dr. Culver that Woodard should be limited to "sedentary" work—this is a word inserted by Woodard. In addition to his above findings, Dr. Culver noted that Woodard's gait was "normal," and even though she was morbidly obese, she was "in no acute distress." He also noted that there were no "spasms, trigger points, inflammation, pain or bruising" of her cervical and thoracic spine, and movement was within normal limits. She did have pain to palpitation in her lumbar spine, but she could "heel and toe walk and squat and rise." He was unable to examine her hips.

Next, even if a conflict did exist between the ALJ's RFC and Dr. Culver's opinion, the ALJ did not err by failing to perform the analysis of 20 C.F.R. § 404.1527. Woodard's motion conflates the relationship of a treating physician with that of a consultative examining physician. Dr. Culver specifically stated that he did not have a treating relationship with Woodard, and that he was relying on her reported past medical

history and his contemporaneous observations to evaluate her physical conditions and limitations. *See, e.g., Batti v. Berryhill*, 4:17-CV-00059-A, 2017 WL 3842863, at *9 (N.D. Tex. Aug. 17, 2017), report and recommendation adopted, 4:17-CV-059-A, 2017 WL 3842351 (N.D. Tex. Sept. 1, 2017) (finding "the ALJ was not required to apply the factors listed in 20 C.F.R. 404.1527(c) prior to giving Dr. Gleaves' opinions very little weight because such requirement only applies to opinions of treating physicians and not consultative examiners such as Dr. Gleaves"); *Sanchez v. Berryhill*, No. M-16-030, 2017 WL 2117526, at *5 (S.D. Tex. Mar, 31, 2017) ("The ALJ was not required to perform a detailed analysis of the '*Newton* factors' before declining to adopt or give significant weight to Dr. De Ferreire's findings and opinions because she is not a treating physician, but rather, Dr. De Ferreire acted as a consultative examiner."); *Ruffins v. Collins*, No. 14-754-RLB, 2016 WL 617445, at *3 (M.D. La. Feb. 16, 2016) ("[T]he factors set forth in 20 C.F.R. 404.1527(c) are not applicable because Dr. Van Hook is not a treating physician.")

Finally, to the extent that Dr. Culver's opinion conflicts with the RFC, the Court notes that, while an ALJ "may also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of [a listing]," an ALJ "[is] not bound by any findings made by State agency medical or psychological consultants." 20 C.F.R. §§ 404.1527(e)(2)(i), (iii) (emphasis added); *see also Dominguez v. Astrue*, 286 Fed. App'x 182, 186 (5th Cir. 2008) ("the use and consideration of medical expert testimony is solely within the discretion of the ALJ").

Thus, the Court finds that the ALJ did not err when considering and analyzing Dr. Culver's opinion.

**B. Did the ALJ err in relying on the VE's testimony?**

Woodard argues that the ALJ's reliance on the VE's testimony was improper because the ALJ's RFC limited her to "light work" with only occasional reaching with her right hand. However, Woodard contends the jobs listed by the VE, including "photo lab technician," require frequent reaching according to the DOT. Accordingly, she contends that they are inappropriate for someone with the limitations the ALJ posed for Woodard.

An "ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so." *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). The Fifth Circuit has noted that, in the case of conflicts between the DOT and a VE's testimony, "the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation." *Id.* at 146. "Neither the DOT nor the [vocational expert] evidence automatically 'trumps' when there is a conflict." SSR 00-4p, 2000 WL 1898704, at *2. If there is a conflict, implicit or express, SSR-04p states that the "adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information." *Id.*

Here, the evidence shows that Woodard's shoulder caused her some problems prior to the surgery, but that it was significantly improved after surgery. She testified at the hearing that she exercised at a gym and walked on a treadmill at home, and that she

10

was looking for work. She stated she could lift a quart of milk without difficulty, but that she had difficulty reaching her right arm out straight. She also confirmed that she had low back pain, and had to stretch approximately every 20 minutes when sitting but that she could only stand for "about five minutes" before having to sit down. The VE testified that, based on the ALJ's hypothetical question, a person with an RFC such as the one assessed in the ALJ's decision could perform Woodard's past relevant work as a photo lab technician. When offered the opportunity, Woodard's counsel chose not to ask the VE a single question.

The Fifth Circuit has recognized in such circumstances that "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). Thus, to the extent that the VE's testimony conflicts with the DOT, that argument has been waived. The ALJ did not err in relying on the VE's testimony.

### C. Did the ALJ err by failing to perform the "special technique" in evaluating Woodard's depression?

The Court has scanned the record in this case, searching for evidence related to Woodard's depression and anxiety. There is little, if any, such evidence.

Woodard did list depression on her list of impairments in her application for disability benefits, and she testified in the ALJ hearing that she had been prescribed

11

Seroquel for depression. She did not submit treating source records regarding her mental health diagnosis or treatment. Indeed, she did not receive any actual mental health treatment other than a prescription. And the medical record is replete with medical providers who note that Woodard was not displaying any symptoms of mental health issues, but was instead alert, oriented, and responsive.

The initial disability determination stated, "Clmt alleges depression but no mental mdi in meor. Clmt has no h/o psychiatric hospitalizations or outpatient mental health services. ADLS do not show marked mental limitations. No further investigation of mental is warranted. The reconsideration determination noted that Woodward was being treated for "panic disorder" by her primary care physician, but no mental health symptoms were noted in exams, and her activities of daily living were intact, and she did not report significant problems getting along with others and no memory problems.

At step two of the disability analysis, the ALJ considers whether a claimant has a medically determinable impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's physical or mental ability to perform basic work related activities. 20 C.F.R. § 404.1520(c). An impairment is only not severe if it is such a slight abnormality that it would have only a minimal effect on a claimant's ability to work. *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). When a medically determinable mental impairment exists, the ALJ must apply a special technique to determine if the impairment is severe. 20 C.F.R. § 404.1520a.

The first step of the special technique is to determine whether the claimant has "a medically determinable mental impairment[ ]" based on the "pertinent symptoms, signs, and laboratory findings." 20 C.F.R. § 404.1520a(b)(1). If a medically determinable mental impairment does exist, then the ALJ is required to make a finding as to the degree of the claimant's limitation "based on the extent to which [the claimant's] impairment interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). To determine the degree of a claimant's functionality, the ALJ must consider: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The ALJ's decision "must include a specific finding as to the degree of limitation of each of the functional areas." 20 C.F.R. § 404.1520a(c)(3).

Here, the ALJ found that Woodard's depression and anxiety were "non-severe impairments," noting that "[h]er treating doctor prescribes medication for her depression and anxiety," and "[s]he does not receive any mental health treatment." Based on the definition of "severe" found in SSR-85-28, he found that Woodard's depression and anxiety "are 'not severe' in that they cause no more than minimally vocationally relevant limitations." Other than a similar statement in later in the RFC analysis, this is the only reference to Woodard's depression and anxiety in the ALJ's opinion. Thus, Woodard is correct in asserting that the ALJ failed to follow the "special technique" called for by 20 C.F.R. § 404.1520a.

But does that failure automatically require remand in this case? Not necessarily. As other courts have pointed out, remand is required in such circumstances only when a reviewing court concludes that the error is not harmless. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). An error is harmless where, absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *January v. Astrue*, 400 Fed. App'x. 929, 933 (5th Cir. 2010) (per curiam ) (unpublished). "[P]rocedural perfection is not required unless it affects the substantial rights of a party." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). In this instance, the ALJ's failure to incorporate the special technique in his decision was harmless, did not affect Plaintiff's substantial rights, and does not require remand. *See, e.g., Acero v. Colvin*, EP-12-CV-502-RFC, 2015 WL 1931716, at *3 (W.D. Tex. Apr. 27, 2015); *Foreman v. Colvin*, CV H-15-1961, 2016 WL 4183223, at *10 (S.D. Tex. July 19, 2016), report and recommendation adopted, CV H-15-1961, 2016 WL 4159839 (S.D. Tex. Aug. 5, 2016).

In *Acero*, the Court found that an ALJ's failure to apply the special technique was harmless error noting, "Although Dr. Urquidi, on December 21, 2010, did assess depression and prescribed Zoloft—thus providing objective medical evidence substantiating Plaintiff's allegation of depression (R:223–24), there is no proof that this depression caused any specific functional limitations." *Acero*, 2015 WL 1931716 at *4. Similarly, although Woodard listed depression as one of her impairments on her disability application and even though she was taking medication for depression, there is no evidence in the record to show that she actually had symptoms of either depression or

anxiety that would cause her any functional limitations. In other words, there is virtually nothing to show that depression or anxiety impacted her in any way. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (lack of physician-assessed limitations substantially supports the ALJ's decision); *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (a diagnosis alone does not establish disability).

Based on this Court's review of the record, there is no reasonable possibility that, absent the ALJ's failure to apply the special technique for mental impairments, the result would have been different. Although ALJ failed to explicitly document the application of the special technique in his decision, the ALJ's determination that Woodard's depression and anxiety was not severe is supported by substantial evidence. Additionally, because the ALJ moved beyond step two of the disability analysis, and considered Woodard's depression and anxiety in his RFC analysis, the ALJ's failure to follow the documentation of the special technique is harmless error.

## CONCLUSION

After considering Woodard's motion for summary judgment, the Commissioner's motion for summary judgment, the record in this case, and applicable case law, the Court finds that there is no genuine dispute of material fact and that the Commissioner's motion for summary judgment should be **GRANTED** and that Woodard's motion for summary judgment should be **DENIED**. The decision of the Social Security Administration is affirmed; and this appeal is dismissed with prejudice.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

SIGNED at Galveston, Texas on September 29, 2017.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE